(No. 6055. March 9, 1934.)

TOM BEECH, Respondent, v. UNITED STATES FIDEL-
ITY AND GUARANTY COMPANY, a Corporation,
Appellant.

[30 Pac. (2d) 1079.]

Joseph T. Pence and J. J. McCue, for Appellant.

Walters, Parry & Thoman and H. V. Creason, for Respondent.

WERNETTE, J.—This action was instituted to recover on a surety bond, given upon the issuance of a temporary restraining order in another action.

December 27, 1922, one R. A. Bowman, commenced an action against respondent, Tom Beech, and one L. R. Adams. The action arose out of a disagreement over a contract for the purchase and sale of a number of sheep, then in the possession of respondent and Adams. At the time of filing the action Bowman prayed that respondent and Adams be enjoined from loading and shipping the said sheep. A temporary restraining order was issued, *ex parte,* and an order to show cause why the defendants should not be enjoined *pendente lite* and the injunction later made permanent. The bond in question in the instant case, for $1,000 was given pursuant to the temporary restraining order.

December 28, 1922, notice was given respondent that a motion would be made that the court make an order to increase the bond and upon failure to so increase it, the restraining order be dissolved. On January 9, 1923, the order to show cause and the motion to dissolve the restraining order were heard by the court. The court took the matter under advisement and on January 12, 1923, made an order denying the motion to dissolve the restraining order and at the same time granted a temporary injunction upon the furnishing of a bond in the sum of $10,000, which bond was furnished by another surety, and a temporary injunction issued.

Some time in January, 1923, while the action commenced by Bowman was still pending, the sheep were sold. Not until July 6, 1924, was the action above referred to tried on its merits, at which time Bowman recovered judgment for damages in the sum of $26,004. The defendants therein appealed to this court (*Bowman v. Adams,* 45 Ida. 217,

261 Pac. 679). The judgment was reversed and the cause remanded for a new trial. At the hearing of the new trial the plaintiff, Bowman, did not appear and the action was dismissed.

This action was commenced by respondent against appellant to recover the damages claimed to have been suffered by the respondent by reason of the expenses incurred in feeding the sheep during the period that the restraining order was in force, for the loss of sheep by death at the rate of twenty-four head per day and for attorneys' fees incurred on motion to dissolve the temporary restraining order. The case was heard before the court without a jury and judgment was rendered for plaintiff and respondent, from which this appeal is prosecuted.

The surety bond sued on obligated the surety under the regular statutory obligation as provided in C. S., sec. 6772, now sec. 6–405, I. C. A. The statute, among other things, providing as follows:

"On granting an injunction, the court or judge must require, . . . . a written undertaking on the part of the plaintiff, with sufficient sureties to the effect that the plaintiff will pay to the party enjoined such costs, damages, and reasonable counsel fees, not exceeding an amount to be specified, as such party may incur or sustain by reason of the injunction, if the court finally decide that the plaintiff was not entitled thereto. . . . . "

This court has heretofore specifically held that a temporary restraining order is, in effect, an injunction. (*MacWatters v. Stockslager*, 29 Ida. 803, 162 Pac. 671.) That a temporary restraining order is effective only until a hearing is had on the order to show cause, and if upon such hearing an injunction *pendente lite* is granted, the latter supersedes the temporary restraining order, which has then served its purpose and becomes *functus officio;* that it is intended only as a restraint on the defendant until the propriety of granting an injunction *pendente lite* can be determined; and it goes no further than to preserve the *status quo* until

that determination. (*Rowland v. Kellogg Power & Water Co.*, 40 Ida. 216, 233 Pac. 869.)

While there are a number of assignments of error, the determination of two main questions are decisive. First, did respondent, in this action, prove that Bowman, the plaintiff in the action in which the bond was given, was not entitled to the restraining order issued? Second, did the respondent prove legal damages sufficient to justify the judgment? In other words, if we find that respondent has proven that Bowman was not entitled to the restraining order at the time it was granted, and has properly proven that he has suffered the damages awarded in the judgment, then the judgment in this court must be affirmed. In order to avoid ambiguity and confusion we shall designate the case in which the temporary restraining order was issued and bond or undertaking furnished, as the Bowman case, and the case now before us, in which suit was instituted on the bond, as the instant case.

In the Bowman case the defendant made a motion to dissolve the temporary restraining order, which motion came on for hearing at the same time as the order to show cause why a temporary injunction *pendente lite* should not be issued. The court denied the motion to dissolve the temporary restraining order and also issued the temporary injunction on the order to show cause. The appellant now takes the position that prior to the time that the temporary restraining order became *functus officio,* by operation of law, the court had denied the motion to dissolve the same, so that the only court order concerning it while it was alive was a determination that Bowman was entitled to the same and that it was rightfully issued; that such determination was upon a hearing for that express purpose; that on January 12, 1923, the temporary restraining order became *functus officio* as the appeal taken by the defendant from the order denying the motion to dissolve the same was abandoned; concluding therefrom that the only determination that the court ever made, as to whether the temporary restraining order was rightfully or wrongfully issued, was

to the effect that it was rightfully issued; that being true, that respondent cannot prevail in the instant case.

Appellant's contention is without merit. While it is true that on a motion to dissolve a temporary restraining order the trial court will consider the object and nature of the relief sought in the complaint, as well as the property or rights requiring protection, and the interests of the parties in the subject matter, the only purpose for which the complaint and the affidavits in corroboration thereof, and counter-affidavits, if any, will be considered is for the purpose of determining whether the plaintiff was entitled to a temporary restraining order until the time for the hearing on the order to show cause, but not to finally decide whether the plaintiff was entitled to the restraining order but merely to determine whether the plaintiff has made a sufficient, or *prima facie* showing entitling him to the order.

Upon the hearing of the motion to dissolve a temporary restraining order, the court does not make final findings of fact or grant relief, which is only proper as a part of the final judgment. (*Rowland v. Kellogg Power & Water Co., supra.*) The case is not tried on its merits at the time of the hearing of the motion, and this court in *Blue Creek Land & L. Co. v. Battle Creek Sheep Co.,* 52 Ida. 728, 19 Pac. (2d) 628, well said:

"The rule is well established in this jurisdiction that the granting or refusing to grant, or the dissolving or refusing to dissolve, a temporary restraining order, is addressed to the sound discretion of the trial court, and its order will not be disturbed except upon a clear showing of such abuse. (Citing cases.) In such cases the appellate court will examine the record only for the purpose of determining whether the trial judge has abused the legal discretion vested in him in granting or refusing the writ. (*Harriman v. Woodall,* 31 Ida. 750, 176 Pac. 565.) On an application for a preliminary injunction it is not necessary that a case should be made out that would entitle complainant to relief at all events on the final hearing. If, from the pleadings and affidavits, it appears that a case is presented

proper for its investigation on a final hearing, a preliminary injunction may issue to preserve the property or rights in controversy *in statu quo* and to prevent irreparable injury thereto. (Citing cases.) The general rule adopted by courts in granting an injunction *pendente lite* is more liberal than is applied upon the trial of a cause upon its merits."

 If no appeal is taken from the order of the trial court denying the motion to dissolve the restraining order, then the fact that the court found that the showing, made by the plaintiff, was sufficient to sustain the restraining order becomes *res judicata,* but not the fact that plaintiff was actually entitled to the restraining order on the merits. If an appeal is taken, such appeal is a limited one. The appellate court merely passes on the question as to whether the showing was sufficient to sustain the order of the lower court, without passing on the actual merits as to whether plaintiff was entitled to a restraining order. So, it is not the law of this state that where a temporary restraining order is issued, and the trial court refuses to dissolve the same on motion and no appeal is prosecuted to conclusion that such is a final determination that the plaintiff was entitled to the temporary restraining order under the provisions of sec. 6–405, I. C. A. The fact that the order denying the motion to dissolve the restraining order was appealed from, but not prosecuted to final conclusion, is not controlling, as the only thing that the appellate court would have done if the appeal had been presented would be to decide as to whether the trial court abused its discretion in dissolving or refusing to dissolve the temporary restraining order upon the showing made. To hold otherwise would lead to the most serious mischief. To illustrate: A, being unscrupulous and not financially responsible and not having a good or valid cause, could commence an action against B. In his complaint he could set forth amply sufficient facts, corroborated by affidavits, to justify the issuance of a temporary restraining order restraining B from handling or disposing of his property of great value, and the court would be fully justified in issuing the restraining order. B could move to dissolve the restraining order, supported

by counter-showing. The trial court, relying on A's show-ing, would not abuse its discretion in refusing to dissolve the same. It would be of no avail to B to appeal as the appellate court would not disturb the order of the lower court unless a clear abuse of discretion was disclosed, but A's showing, even though without merit, could be made as strong as B's showing. During the time that the restrain-ing order was in force and effect, B's damages, as a result thereof, may have been enormous. To say that it was the intent of the statute law, as worded, that such order made by the district court, even though not appealed from, was a final determination of the right of A to the restraining order, even though it should develop that A abandoned his case on the merits or it was determined at the trial that A had no cause of action whatever against B, is so unconscionable and shocking to a sense of justice that a mere statement of the facts is sufficient to show that such is not the intention of the law, and that the provision, "if the court finally decide that the plaintiff was not entitled thereto," in sec. 6–405, I. C. A., has reference to the final decision of the court on the merits of the case in an action as we have before us. (*Davidson Grocery Co. v. United States F. & G. Co.*, 52 Ida. 795, 21 Pac. (2d) 75; *Gyger v. Courtney*, 59 Neb. 555, 81 N. W. 437; *Rice v. Cook*, 92 Cal. 144, 28 Pac. 219.)

The appellant in support of his theory cited *Wakefield v. Griffiths*, 45 Ida. 51, 261 Pac. 665. The court there said:

"The ultimate dissolution of a temporary injunction after a trial on the merits does not amount to a finding that the temporary injunction was not properly issued; gen-erally it is dissolved as a matter of course after the rights of the parties have been determined.

"The facts, as found by the trial court, show that the sheriff took possession of property not covered by the chattel mortgage, that he was attempting to collect a greater sum than was owing on said mortgage, and it clearly appears that the issuance of an injunction was necessary and proper to prevent the sheriff, who was proceeding under appellant's

direction, from selling property not covered by the said chattel mortgage.''

There the mortgagee attempted to foreclose, claiming $600 more than was actually due on the mortgage, and took possession of 600 sacks of potatoes when only 500 sacks were covered by the mortgage. This court properly held that the issuance of an injunction was necessary and proper. In that case the trial court dissolved the injunction on trial of the merits, but gave judgment to the mortgagee for the correct amount due on the mortgage and made the judgment a lien against the property covered by the mortgage. That case, as well as the other Idaho cases cited by appellant, are readily distinguishable from the instant case, and the law therein announced is not out of harmony with the rule stated herein. The only case cited by appellant which seems to support his contention is *Curtiss v. Bachman,* 110 Cal. 433, 42 Pac. 910, 52 Am. St. 111, an early California case, which, if not expressly at least impliedly has been overruled in *Moore v. Maryland Casualty Co.,* 100 Cal. App. 658, 280 Pac. 1008, in which the court said:

''The subsequent dismissal of the action was equivalent to a determination that the applicant was not entitled to an injunction. In the Asevado case, *supra,* it is said: 'The voluntary dismissal of the action by the (plaintiffs) had the same effect as a decision of the court that (they) were not entitled to the injunction.' '' (Citing cases.)

■ Appellant claims, however, that in view of the fact that Bowman did not appear to prosecute his action at the trial on the merits of the case that, therefore, notwithstanding the fact that the case was dismissed, the court never finally decided that the restraining order was wrongfully issued.

''The dismissal of a suit in which an injunction has been issued amounts to a determination that the injunction has been improperly granted, and a right of action immediately accrues to defendant.'' (32 C. J. 449, sec. 773. Citing a large number of cases supporting the text.)

We see no difference, by analogy, as between a case where a plaintiff voluntarily dismisses his action and one where

he abandons the same so that a judgment of dismissal is entered for want of prosecution. The effect is exactly the same. In the Bowman case, the plaintiff having failed to prosecute his case to its final conclusion on the merits, and the court having dismissed the same, it amounted to a final adjudication of the case, as much so as if the case had been tried on its merits and judgment of dismissal entered. We hold that the judgment so entered was to the effect that the plaintiff in the Bowman case was not entitled to a temporary restraining order.

Having reached such conclusion, the question now arises: Did respondent, in the instant case, prove his damages as awarded in the judgment? Appellant insists that the only measure of damages which should be applied in the instant case is to show the loss of profit which respondent sustained, if any, on account of the restraint, and that such loss of profit is shown by the difference between what the respondent would have received for the sheep had he not been restrained, and what he did receive when they were released and sold on the market. As to whether respondent could, or should have adopted such method to prove his damages, if any, we need not decide as there was another element of damage which respondent was able to prove. The record discloses that if the temporary restraining order had not been issued in the Bowman case, all of the sheep then in existence, and in question, would have been sold on December 28, 1922, at a price of 5c per pound; that there was a death loss during the period of the restraining order of twenty-four head per day, and these sheep were of the value of $6 per head. The restraining order became effective December 27, 1922, and ended when the temporary injunction took its place on January 12, 1923, so that the sheep were held under the restraining order for sixteen days. There was, therefore, a total death loss of approximately $2,304. There was a market price on these sheep that died prior to the time the restraining order went into effect, but there was no market value on the same after death or at the time the restraining order became ineffective by operation of law. There was no fluctuation of market price as to the dead

sheep, as to them it was a total loss to respondent. Appellant attempts to escape this conclusion by stating that the death of these sheep was an element of expense in the keeping and feeding of the entire band of sheep for the market. But such contention is not logical; the dead sheep were a total loss to respondent and the restraining order was the proximate cause of such loss. (*McGuire v. Post Falls etc. Mfg. Co.*, 23 Ida. 608, 131 Pac. 654; *Boise Valley Const. Co. v. Kroeger*, 17 Ida. 384, 105 Pac. 1070, 28 L. R. A., N. S., 968; *Slack v. Stevens*, 19 Colo. App. 538, 76 Pac. 741; 2 Sutherland on Damages, 4th ed., sec. 527, p. 1745.) The dead sheep were no longer items of personal property subject to sale on the market, and were in an entirely different class than the remaining live ones.

In view of the fact that the uncontradicted evidence shows that the loss sustained by respondent on account of the death of the sheep during the period of the restraining order far exceeds the amount of the bond and judgment prayed for, it is unnecessary to discuss or consider the questions raised with reference to damages resulting on account of the feeding of the sheep during the period of the restraining order or the right of respondent to collect attorney's fees incurred by him in an attempt to dissolve the temporary restraining order.

In view of the conclusions reached, the judgment is affirmed, with costs awarded to respondent.

Budge, C. J., and Givens and Holden, JJ., concur.

Petition for rehearing denied.

MORGAN, J., Dissenting.—The foregoing opinion disregards the fact that this is an action on a bond given to indemnify respondent and Adams, in case damage resulted to them from the issuance of the temporary restraining order.

The sheep were to have been sold on the day following the issuance of the order and would have been sold had it not been issued. After this order had been in force a

number of days, during which respondent and Adams were prevented by it from selling their sheep, the order and the bond given to secure its issuance were superseded by an injunction *pendente lite* and a bond given, by another surety than appellant, to secure its issuance. If there is liability on the bond sued on in this action the amount of that liability is fixed by the amount of damage, in dollars and cents, suffered by the owners of the sheep by being prevented from selling them between the date of the giving of this bond and the date on which it was superseded by the bond for injunction *pendente lite*.

Some of the sheep died, and those which did not die had to be fed, during the time the bond involved in this suit was in force and effect. If the value of the sheep, on the date the temporary restraining order was superseded by the injunction *pendente lite*, was equal to or greater than their value at the time they would have been sold had the temporary restraining order not been issued and, in addition to that, was equal to or greater than the cost of feeding and caring for the sheep during the time their owners were restrained from selling them by the temporary restraining order, then the owners were not damaged by the order, for it caused them to lose nothing. Although a number of the sheep died and the feeding and caring for those that did not die was expensive, the market value of those remaining may have sufficiently increased, during the time the restraining order and this bond were in effect, so that when liability attached, pursuant to the injunction *pendente lite*, the owners of the sheep had lost nothing. In that event no damage resulted which was covered by the bond sued on in this action, for no loss occurred during the time it was in effect. The bond given to procure the issuance of the injunction *pendente lite* is liable for any damage which occurred after it was given due to the issuance of that injunction. The evidence does not show what the market value of the sheep was at the time the bond sued on herein ceased to be security for damage and, therefore, fails to show what damage, if any, the owners of the sheep suffered for which this bond is liable.

If the majority opinion is sound one who has actually profited by a rising market while delayed in the sale of property, held by him for sale, may recover damages for the delay.

After the temporary restraining order was issued and served a motion to dissolve it was made which, on hearing had in the district court, was denied. The order denying that motion amounted to an adjudication, as provided for by the laws of Idaho, to the effect that the temporary restraining order was not wrongfully issued. An appeal was taken from that order and was abandoned, which puts the case, in this respect, in the condition it would have been in if the appeal had not been taken.

As pointed out in the majority opinion, a temporary restraining order is, in effect, an injunction. Therefore, I. C. A., sec. 11–201, providing for an appeal from an order "granting or dissolving an injunction" and "from an order refusing to grant or dissolve an injunction," applies to it. Section 11–219 provides that "upon an appeal from a judgment the court may review . . . . any intermediate order or decision . . . . except a decision or order from which an appeal might have been taken." That section, by implication, prohibits a review, on appeal from a judgment, of the question of whether a temporary restraining order was issued rightfully or wrongfully, and makes an order, granting or denying a motion to dissolve a temporary restraining order, from which an appeal is not prosecuted, final and conclusive within the meaning of sec. 6–405, wherein it is provided that the injunction bond shall be "to the effect that the plaintiff will pay to the party enjoined such costs, damages, and reasonable counsel fees, not exceeding an amount to be specified, as such party may incur or sustain by reason of the injunction, if the court finally decide that the plaintiff was not entitled thereto." Therefore, the order denying the motion to dissolve the temporary restraining order is *res adjudicata*.

With respect to this phase of the case, it is said in the majority opinion:

"If no appeal is taken from the order of the trial court denying the motion to dissolve the restraining order, then the fact that the court found the showing, made by the plaintiff, was sufficient to sustain the restraining order becomes *res adjudicata*, but not the fact that plaintiff was actually entitled to the restraining order on the merits. If an appeal is taken, such appeal is a limited one. The appellate court merely passes on the question as to whether the showing was sufficient to sustain the order of the lower court, without passing on the actual merits as to whether plaintiff was entitled to a restraining order."

The majority opinion confuses the effect of an appeal from an order granting a temporary restraining order and an appeal from an order denying a motion to dissolve it. If the restraining order is granted and an appeal is taken from the order granting it, the appellate court has before it the one question of whether the showing was sufficient to sustain the order. If defendant does not appeal from the order granting the temporary restraining order, but moves to dissolve it, he may make a showing in support of the motion and plaintiff may join issue by making a showing in opposition thereto. The determination of that issue adjudicates, not the question of the sufficiency of plaintiff's application for a temporary restraining order, but whether he has a right to such order, and it is to be determined by the showing made by both parties. An appeal from an order denying a motion to dissolve a temporary restraining order does not present to the appellate court the sole question as to the sufficiency of the showing made by plaintiff to procure the order, but whether, in the light of the showing made by both parties, the restraining order should have been continued in force or dissolved.

I. C. A., sec. 6–409, provides for making application to dissolve or modify an injunction which has been granted without notice, and secs. 6–410 and 6–411 are as follows:

Sec. 6–410. "If upon such application it satisfactorily appear that there is not sufficient ground for the injunction, it must be dissolved; or if it satisfactorily appear that the extent of the injunction is too great, it must be modified."

Sec. 6–411. "Upon the hearing of an application for an injunction upon notice to the adverse party, or upon return of an order to show cause why an injunction should not be granted, or upon an application to dissolve or modify an injunction granted without notice, where the injunction was granted or is applied for wholly or in part upon affidavits, the party resisting the application or moving to dissolve the injunction may, by three days' written notice, require the adverse party to produce at the hearing for cross-examination before the court or judge, the affiants of the affidavits upon which he relies for the injunction, or to resist the application for its dissolution; and any party so requiring his adverse party to produce his witnesses at such hearing must himself produce for cross-examination, the witnesses upon whom he relies upon such hearing; and either party may have the same process to secure the attendance of witnesses at such hearing, as upon trial of issue of fact in the district court; and in such case where the attendance of witnesses shall have been so required, no affidavit shall be read or considered by the court or judge upon such hearing unless the affiant is so produced for cross-examination: provided, that the court or judge may, at the conclusion of the examination of the witnesses produced by the respective parties, for good cause shown, adjourn the hearing to enable either party to secure the attendance of an absent affiant, or may direct his examination to be taken in writing before such officer and at such time and place as the court or judge may designate. The examination of any witness produced before the court or judge must, upon request of either party, be reduced to writing, subscribed by the affiant, certified by the judge and filed in the action, and, with any examination taken in compliance with the order of the court or judge, be made a part of the record upon appeal in the same manner as affidavits are made a part of such record."

These sections of our code provide for complete and final adjudication of the right to a temporary restraining order, or injunction, independently of the trial of the action in which it is granted.